McLaren, administrator, *vs.* Irvin, administrator.

63 275,
106 506

[Warner, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. If the holder of a bond for titles show, in defense to a bill for account and settlement of a balance of purchase money, brought against him by the obligor's administrator, that the estate of the obligor is insolvent, and that a title paramount is outstanding in a stranger, there need be no surrender nor offer to surrender the possession, or to rescind the contract, in order to have the defense allowed. A grant from the state is paramount title till confronted with a good adverse or derivative title.

2. Though no title or color of title in the vendor, beyond mere possession, be shown, and though it appear that his possession did not ripen into a prescriptive title, yet, if the possession which the vendee acquired from him with and under the bond has since grown up into a good prescriptive title in the vendee, the purchase money ought to be paid.

3. An action of ejectment brought by the grantee from the state, or his heirs, in due time, against the holder of a bond for titles with possession under it, and terminated by a non-suit, saves the running of the statute of prescription whilst the action was pending, and for six months after the non-suit was granted, if the action should be recommenced within that time.

Equity. Vendor and purchaser. Prescription. Statute of limitations. Before Judge Crisp. Dougherty Superior Court. April Term, 1879.

The bill in this case was filed by Irvin, as administrator upon the estate of James Bond, deceased, against McLaren, for an account and settlement of the balance of purchase money due for land. Pending the litigation, McLaren died, and his administrator was made a party in his stead. The jury found for complainant, and defendant moved for a new trial upon the following grounds, amongst others:

1. Because the court refused to allow defendant to show that the non-suit in the action of ejectment by the heirs of the original grantor did not result from any defect in their title, but from the failure of the evidence to disclose with precision who were the heirs.

2. Because the court erred in charging that the complainant was entitled to recover the purchase money unless defendant showed a paramount outstanding title, and that the plat and grant from the state to James Lefevre to said land did not show such title.

3. Because the court erred in charging that Bond acquired a prescriptive title to said land by the possession of McLaren under the bond for title, if that possession was for more than seven years.

4. Because the court erred in charging that the commencement and pendency of the action of ejectment in favor of the heirs at law of Lefevre, brought in 1859, if the same had been non-suited, did not stop the running of the statute of limitations, nor prevent Bond from acquiring a good prescriptive title by reason of McLaren's possession.

The remaining facts, so far as material, appear in the opinion.

The motion was overruled, and plaintiff excepted.

D. A. VASON; C. B. WOOTEN, for plaintiff in error.

R. F. LYON; WARREN & HOBBS, for defendant.

BLECKLEY, Justice.

1. The case was in equity. The vendor and vendee were both dead, and the estate of the former was insolvent. The purchase money for the land had been partly paid. The bill sought an account and settlement as to the balance. The purchaser had not been evicted, but his administrator proved that the grant from the state, which in Georgia is always the tap-root of title, was outstanding in a stranger. Such a grant is title paramount, until confronted with a good adverse or derivative title. The purchaser held the vendor's bond for title, and under the bond, he or his estate was entitled to a conveyance with full warranty, on payment of all the purchase money. Under these circumstances, the vendor's administrator, who was complainant in the bill, insisted that the purchaser's administrator, who was defendant in the bill, must either pay up the balance or rescind the contract and surrender the premises, and that the defense of the outstanding grant could not be gone into without an offer of rescision or surrender. Obviously, the position is untenable. Though the purchaser died unevicted, and his administrator still has possession, never having yielded to the title evidenced by the grant, so long as that title is not bought in, barred or extinguished, there is reasonable and probable danger of an eviction under it, and if an eviction shall happen, what redress will there be for the estate of the purchaser? The estate of the vendor being insolvent, its warranty will be worthless. Not only the purchase money heretofore paid towards this particular lot, but that now exacted will, if paid, be a total loss. For two

reasons it is no answer to say that the rents and profits enjoyed under the contract of purchase, will be reimbursement in whole or in part. The first reason is, that the rents and profits of this lot may have to be accounted for to the real owner of the land, the holder of the paramount title ; the second is, that the one who enters and occupies as purchaser, and commits no breach of his contract, failing to pay in full and become invested with title only because his vendor cannot comply on his part, is not, as a general rule, liable to the latter for rents and profits. A man who rightfully enters for ownership and not for tenancy, does not expect to pay rent, and to convert him into a tenant against his will and without any fault or default imputable to him, would ordinarily be gross injustice. One who is to be charged with rent by the person who puts him in possession ought to know it at the time, so that he might decline the terms if he thought proper. It is a grave thing to be treated as a mere tenant of land which you did not want to lease or rent, and which you thought you were using and occupying as purchaser, with a prospective title in view, dependent on nothing but the payment of a balance of purchase money. When a man knows he is to pay rent, he manages his business and conducts his affairs accordingly ; but when he has no such expectation, to take him unawares after a long series of years with a large claim of the kind, is, it may be, to surprise him into ruin. There is nothing in the shape of a debt so inconvenient to meet as one which you had no suspicion that you owed. There is a sort of ferocity in startling a man with a tremendous bill which he never before heard of or thought of. To leave matters in *statu quo* for the present between these parties, so far as a settlement for the particular lot of land is concerned, will not necessarily be to sanction the proposition that the purchaser's estate is to keep the land forever, without making the deferred payment. The defense is good upon the supposition that it is not too late for an eviction by the state's grantee, his heirs or assigns, and it will stand good

only so long as such eviction remains legally practicable. The moment the grant ceases to be title paramount, the purchaser's estate must either pay or surrender possession on such terms as may be found just and equitable.

2. The vendor's administrator contends that the grant as title is already barred, and that a good adverse prescriptive title has matured in the purchaser and his heirs. The purchaser's administrator makes two replies: First, he says that conceding the fact, the prescriptive title will not inure to the benefit of the vendor's estate so as to entitle the complainant in the bill to collect the balance of purchase money, the prescriptive title being an original independent title which has grown up in the purchaser and his heirs; and, secondly, he denies the fact that the grant is barred, and says there may still be an eviction under it. The first of these replies is unsound. True, it does not appear that the vendor had title or even color of title, but he had possession, and that possession passed to the purchaser, accompanied with a bond by the former to the latter for titles to be made on the payment of the agreed purchase money. It was thus the contract of purchase and what was done in pursuance of it that put the purchaser in position to found and perfect a prescriptive title. His possession was the continuation and prolongation of that which the vendor had; and, as to the vendor, it was not and never became adverse, though it was adverse as to the rest of the world. The bond of the vendor was the color of title which caused the possession to ripen (if it did ripen) in seven years. Without this bond, twenty years' possession, instead of seven, would have been requisite. Code, §§2682, 2683. The two parties to the bond were locked together in privity and friendly alliance to uphold the title which the one was thought to have, and the other had stipulated to acquire from and through him. The possession was something in which they had a mutual interest in maintaining. It was for the purchaser's immediate enjoyment, but the vendor was bound to protect him in that enjoyment against

all rightful adverse claimants. The purchaser held his possession under the vendor, and in subordination to him as the recognized owner for the time being. Can it be that in some mysterious way the prescription was virtually running against the vendor as well as against strangers, and that at the conclusion of the prescriptive term, the purchaser had a good title and his vendor had none at all, not even a right to a restoration of the possession which had been derived from him? We think not. Suppose the purchaser had bought in the grantee's title, the measure of deduction from his original purchase money would have been what it cost him to do so. Code, §2949. Suppose the grantee had released to him for a mere nominal consideration, wishing to yield to his possessory right before it matured into an invincible title by prescription, would not the vendor have taken the benefit of the release? What, then, is the substantial difference in this respect between a release and mere negative acquiescence by forbearance to sue until it had become too late to sue with effect? We can see none.

3. The second reply comprehended, besides matter of fact for the jury, a question of law for the court to be answered in instructing the jury. There had been an action of ejectment brought by persons claiming to be the grantee's heirs at law, and the same had resulted in a non-suit shortly before the present case was tried. The action of ejectment was against the purchaser, and seems to have been commenced in due time. The statute of limitations or prescription did not run against the plaintiffs in that action whilst it was pending; nor would it run for six months after the non-suit, in case of its being re-commenced within that time. Code, §2688. The ground upon which the non-suit was granted was immaterial.

There should be a new trial.

Judgment reversed.